John White, Esq., SB #1741   E-filed on February 24, 2011
WHITE LAW CHARTERED
335 West First Street
Reno, NV 89503
775-322-8000
775-322-1228 (Fax)
john@whitelawchartered.com
Counsel for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| In re: | | CASE NO.: BK-N-10-54234-gwz |
|---|---|---|
| JAMES A. WEST, *aka* JIM WEST, and CARLEEN J. WEST, *dba* SWEET WATER RANCH, | | Chapter 12 |
| | | CHAPTER 12 PLAN |
| | | Hearing Date: Pending<br>Hearing Time: Pending<br>Estimated time: 1 hour |
| Debtors-in-possession. _____ / | | |

**CHAPTER 12 PLAN**

JAMES A. WEST AND CARLEEN WEST, husband and wife, ("Debtors") submit the following Chapter 12 Plan (the "Plan") pursuant to section 1221 of the Bankruptcy Code:

Preliminary Statement:

This Plan accepts the December, 2010 appraisal by Nevada State Bank ("NSB") to the effect that the 960 acre ranching operation, including water rights, that Debtors' own near Ely, Nevada (the "Sweetwater Ranch)" has a fair market value of $1,620,000 (See Claim 11, on file herein). Therefore NSB's claim (approximately $922,000) is fully secured. The Plan deaccelerates the NSB note but does not change its terms or interest rate. The NSB note's interest rate by its terms will reduce from 10.5% to, assuming interest rates remain where they have been the last 26 months, approximately 5.25% on September 22, 2011.

Tri-State Livestock Credit's ("Tri-State") secured claim, is allowed at $350,000 and also is fully secured. The Plan reduces the interest rate on Tri-State's secured claim from 7.75% per annum to 6% per annum as of the effective date of the plan, but does

1

not otherwise change the terms of the Tri-State note. All but $100,000 of Tri-State's $1,402,588.54 unsecured claim is disallowed as Tri-State's loan is also adequately secured by property not owned by Debtors, being the much larger nearby Paris Ranch, owned by Double U Livestock, LLC, an Oregon LLC.

The only other secured creditors, Wells Fargo Bank, NA (security interest in Debtors' 97 Ford van) and Wells Fargo Equipment Finance, Inc (security interest in Debtors' backhoe) are undersecured and have both a secured and unsecured claim. The backhoe is essential to farm operations and the van is necessary as it is fitted to accommodate Carleen West's physical impairment.

Pursuant to the Plan, the Debtors assume the Farm Credit Lease of Debtors' two pivots and all BLM Permit Leases.

The Plan is a five year Plan, funded by operations, net income during the first two years being used to acquire livestock, and in the third through fifth year primarily to cure the default to NSB.  The Plan estimates that unsecured creditors will receive payment of approximately $33,000.

The Debtors' Plan assumes sufficient equity to allow it to use the approximate $102,000 net income for the first year (ending December 1, 2011) to purchase 500 ewes and 12 rams and the approximate $114,000 net income for the second year (ending December 1, 2012) to purchase approximately 500 more ewes and 16 more rams.  This additional livestock is essential to the feasibility of this Plan. Payments to NSB in the amount of $ 164,752 will be made beginning December, 1, 2013 and continue annually in that amount on December 1, 2014 and December 1, 2015. That amount (total of approximately $500,000 during the Plan period) is more than sufficient cure all arrearages and bring the NSB note current.  The lien of NSB and Tri-State are unimpaired.

As all of Debtors' net income and profits (disposable income) are paid to the Trustee on December 1 of years 4 and 5 of the plan (totalling approximately $33,000), the Plan is fair to unsecured creditors, who, should the Debtors be converted to Chapter 7 and liquidated, would get nothing (See liquidation analysis below).

## I.

## TERM

1.01. Debtors are family farmers with regular annual income and are eligible to be a debtors under Chapter 12 of the Bankruptcy Code.

1.02. Debtors will submit future income to the supervision and control of the Trustee as is necessary for the execution of the Plan. A <u>Ranch Operation Statement</u> is attached hereto as <u>Exhibit 1</u>. A <u>Non-Ranch Budget and Operation Statement </u>is attached hereto as <u>Exhibit 2</u>. Debtor will be able to make the payments under the Plan and comply with

the provision of the Plan. The Trustee may move the Court for dismissal of the case if Debtors fail to make any payment to the Trustee called for by the Plan.

1.03 The plan provides for payments for a five year period as permitted by Section 1225(a)(4) and (b)(1)(B). A <u>Disposable Income Schedule</u> is attached hereto as Exhibit 3. A <u>Schedule of the payments to creditors</u> required by the Plan is attached hereto as <u>Exhibit 4</u>.

## II.

## UNCLASSIFIED CLAIMS

2.01. In accordance with Section 1222(b)(1) of the Bankruptcy Code, administrative Claims (including but not limited to Professional Fee Claims) and priority Claims are not classified and are excluded from the below-listed Classes.

<u>Administrative claims</u>: Each holder of an Allowed administrative Claim (excluding any holder that agrees to different treatment), including any administrative Claim for real estate and personal property taxes due and payable as of the Effective Date, will receive the amount Allowed for its administrative Claim, in cash, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, to be paid on the Effective Date; provided, however, that Allowed administrative Claims representing post-petition liabilities, whether or not incurred by law or under contract, will be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating hereto.

*Professional Fee Claims*. Allowed Professional Fee Claims shall be paid, in cash, over the period of the Plan. Funds representing any fees not yet approved by the Court, excepting disclosed retainer, shall be held in the Professional's respective escrow account pending approval of the Professional's fees and expenses by the Court after notice and a hearing. Professional fee payment estimates are set forth in Exhibits 1 and 4.

<u>Priority Claims:</u> Taxing bodies, including but not limited to the Internal Revenue Service, entitled to priority in accordance with the Bankruptcy Code (as well as any such Claims that are also secured by liens against Debtor) will be paid in equal monthly installments including applicable interest for a period of sixty (60) months from the Petition Date. Priority tax claimants whose claims are partially secured by liens shall (a) retain such liens until such time as the portion of the Claims secured by liens are paid in full and (b) apply monthly installment payments provided for under the Plan, if any, first to the secured portion of such claims. Payment of priority Claims shall commence on the Effective Date.

<u>Trustee Fees:</u> All fees required to be paid to the United States Trustee will be paid in full upon confirmation of the Debtor's Plan, and the Debtor shall remain current on such obligations. All fees required to be paid to the Chapter 12 Trustee pursuant to 11 USC §326(b) will be paid in full over the period of the Plan. Debtor's estimate of such payments is set forth in Exhibits 1 and 4.

## III

## CLASSIFICATION AND TREATMENT OF CLAIMS

### SECURED CLAIMS

3.01 Secured Claimants shall be paid by the Trustee from income delivered to the Trustee by Debtors through the five year plan period.  Thereafter Secured Claimants will be paid directly by the Debtors. Holders of secured Claims shall retain the lien securing such claims.  The value, as of the effective date of the plan, of property to be distributed by the trustee or the debtor under the plan on account of such claim is not less than the allowed amount of such claim. Debtors shall perform all terms of their agreements with secured creditors except as modified by the plan. Secured Claimants shall be allowed to exercise all rights and remedies available to them under the law except as modified by the Plan and operative provisions of the Bankruptcy Code. All fees, penalties or late charges provided in the security documents shall be allowed concerning post confirmation defaults, if any, in the same percentage as the fee, penalty or charge was assessable pre petition. The security interests held by Class 1 through Class 4 claimants shall be extinguished when their secured claims have been paid in full per the plan. This means that each secured claimant shall release its security interest and provide a title or lien release to Debtors after its secured claim has been paid in full pursuant to the terms of the plan.

3.02.  All monetary defaults have been considered in the Plan. All such defaults shall be deemed cured on confirmation of the Plan. A secured claimant may proceed in accordance with the terms of its security agreement and applicable law without further order of the Court if Debtors defaults in any payment due under the plan after the Chapter 12 case is closed.

3.03. Class 1 Claim: The claim of Nevada State Bank (NSB) secured by a senior mortgage on the debtors' deeded real property and water rights described in NSB's claim, on file herein (Claim # 11), shall be the Class 1 claim.  The Class 1 claim is $921,268.83 (filed amount minus pre-payment penalty).  NSB is oversecured.  Other than being deaccelerated, the NSB claim in unimpaired. During the period of the Plan, the Class 1 claim shall be paid through annual payments, beginning December 1, 2013, as set forth in Exhibit 1,  attached hereto, which amount will be first applied to pre-petition arrearages until such arrearages are paid in full.  Thereafter NSB will be paid as required by the terms of its note until its note is paid in full.  This treatment of the Class 1 Claim ensures 1) that any default will be cured during the plan period and 2) that NSB is paid the full effective date value of its secured claim. Payments due NSB following the 5th year shall be made by the debtor and not by the Trustee.

3.04 Class 2 Claim: The $350,000 secured claim of Tri-State Equipment Credit, also secured by Debtor's Ranch, shall be the Class 2 claim. The Class 2 secured claim shall the in the amount of $350,000 and shall  accrue interest at the rate of six percent per

4

annum from the Effective Date of the Plan. The Tri-State secured note shall be fully amortized over twenty years, with payments necessary to accomplish this beginning on the first day of the Sixth year following the effective date of the plan. Tri-State shall be allowed an unsecured claim of $100,000. Tri-State's claim is also secured by the property of a non-debtor. Nothing herein shall affect Tri-States' rights against any non-debtor.

3.05 Class 3 Claim: The Secured Claim of Wells Fargo Bank, NA, shall be the Class 3 Claim. It is allowed in the amount of the fair market value of Debtors' 1997 Ford E250 van, and shall be paid in the manner set forth in Exhibits 1 and 4, attached hereto. The Class 3 Claimant will retain its lien.

3.06 Class 4 Claim: The Secured Claim of Wells Fargo Equipment Finance Inc shall be the Class 4 Claim. It is allowed in the amount of the fair market value of Debtors' backhoe, and shall be paid in the manner set forth in Exhibits 1 and 4, attached hereto. The Class 4 Claimant will retain its lien.

**General Unsecured Creditors**

3.07 Class 5 Claims.   Allowed unsecured claims not otherwise described in the Plan shall be Class 5 claims. All Class 5 claims are one class and shall be paid pro rata from the money received by the Trustee not otherwise disbursed under the Plan. Class 5 claimants shall receive a pro rata share of at least $33,000 during the 5 year period of the plan, as is more specifically set forth in Exhibits 1 and 4, attached hereto.

The non-governmental claim bar date is March 6, 2011. Debtors estimates that allowed Class 5 claims will be about $250,000 on the Effective date of the Plan. The unsecured portions of the secured claims shall be paid under this class.

IV.

**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

4.01  Excepting Debtors' lease of pivots from Farm Credit Leasing Corporation and its BLM Permit Leases, which leases are hereby expressly assumed, all executory contracts and unexpired leases not otherwise assumed prior to the confirmation date are hereby rejected.

V.

**MEANS FOR EXECUTING THE PLAN**

5.01. Debtors operate a ranch and farming business on 960 acres of deeded land (APN 008-340-01) located in White Pine County, Nevada, about 50 miles north of Ely. Debtors also own water rights and approximately 2370 USDI-BLM AUMs (See Exhibit 5 for a description of Debtor's AUMs).  Debtors, now 79 years old, have been engaged in the sheep and cattle business for all their lives.  Debtors will continue the operation of their business during the term of the Plan.The farm and ranching business owned by

Debtors includes, at this time:

(a) producing crops for sale.  Debtors have two 120 acre pivots, giving them 240 acres of alfalfa.  Debtors expect two cuttings a year, with the aftermath used for grazing.  The income reasonably expected from Debtors' alfalfa operations are more particularly described in Exhibit 1,

(b) pasture and lambing operation.  Debtors have a lambing facility which, due to the relative low elevation of the Sweetwater Ranch, is attractive to adjacent sheep ranchers.  The income reasonably expected from this operation is described further in Exhibit 1.

As Debtors' current operations under-utilize the Sweetwater ranch's capabilities, the income from current operations is insufficient to fund the Plan.  Therefore, Debtors are using net income for the first two years of the Plan to acquire ewes and lambs, as more particularly described in Exhibit 1.  The additional revenue produced by this livestock is described in Exhibit 1 and is sufficient to fund the Plan.

## VI.
## LIQUIDATION ANALYSIS
### (CHAPTER 7 COMPARISON)

6.01.  The Sweetwater Ranch, including water rights, has a fair market value of $1,620,000.  Debtors also own a third interest in the Double U LLC, which owns the Paris Ranch.  Debtors' interest in the Paris ranch is exempt (except for profits, and no profits are expected during the term of the Plan). The Sweetwater Ranch has liens against it of approximately $922,000 in favor of NSB and $350,000 in favor of Tri-State Livestock. See Amended Schedules of Assets and Liabilities. Debtor has homesteaded the ranch.  Therefore the equity in the Sweetwater Ranch (approximately $350,000) is completely exempt and unsecured creditors would get nothing.

The value of property to be distributed under the Plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of Debtors was liquidated under Chapter 7, title 11, United States Code on the Effective date of the Plan. All creditors holding priority and general unsecured claims shall receive payment equal to or greater than the amounts that the creditors would have received if the estate of Debtors was liquidated under Chapter 7.

## VII.
## GOOD FAITH

7.01. The Plan complies with Chapter 12 and all other provisions of the Bankruptcy Code. Any fee, charge or amount required to be paid under Title 28 of the United State code or required by the Plan to be paid before confirmation has or will be paid before confirmation. The Plan has been proposed in good faith and not by any means forbidden by law.

6

## VIII.
## CONFIRMATION PROCEDURE

8.01. Objections to confirmation of a Plan are governed by Fed.R.Bankr.P. 9014. The Court may confirm the Plan and accept the allegations asserted herein if written objections to the Plan are not filed with the Court and served on counsel for Debtors and the Trustee not less than five court days before the date fixed for hearing on confirmation. The hearing on confirmation shall be governed by the provision of Section 1224.

## IX.
## REVESTMENT OF PROPERTY IN Debtors

8.01. The automatic stay shall be lifted upon entry of discharge unless otherwise provided by court order or the Plan. Property of the estate shall vest in accordance with applicable law if the case is converted to Chapter 7 or Chapter 11 of the Bankruptcy Code. Property of the estate shall vest in Debtors upon entry of discharge unless otherwise provided.

## X.
## OTHER PROVISIONS

10.01 Post Confirmation Financing: Debtors may obtain post confirmation financing without obtaining an order of court provided such post confirmation financing is reasonable and consistent with the ordinary course of business conducted by Debtors. All such financing arrangements shall be reported to the Trustee within forty-five days of consummation of such financing during the term of the Plan. Debtors may give liens against accounts receivable generated and produced by Debtors.These liens shall be superior to any liens against the accounts receivable generated and produced by Debtors (after they filed for relief under Chapter 12) held by a prepetition creditor. Debtors shall not incur postpetiton debt except in the ordinary course of business without the written consent of the Trustee.

10.02. Chapter 12 payments : Debtors shall make all payments require under the Plan to M. Nelson Enmark, Trustee, 3855 N. West Ave., Ste. 108, Fresno, California, 93705 unless otherwise instructed in writing. A schedule for the payments required by the Plan is provided in the Exhibit 4, attached hereto.

10.03. Effect of Confirmation : Except as provided in Section 1228(a), the provisions of a Chapter 12 Plan confirmed by the court binds Debtors and each creditor whether or not the claim of such creditor is provided for by the Plan, whether or not the creditor filed a claim, and whether or not such creditor has objected to, accepted or rejected the Plan. Property vesting in Debtors after the entry of a discharge shall be free and clear of any claim or interest of any creditor provided for by the Plan except as provided in Section 1228(a), the Plan, or the Order Confirming the Plan.

10.04. Modification of Chapter 12 Plan Before Confirmation : Debtors may modify the Plan at any time before confirmation so long as the provisions of section 1223 are

satisfied.

10.05. Modification of Chapter 12 Plan After Confirmation : Modification of the Plan is permissible in accordance with section 1229.

10.06. Discharge : The Court shall enter a discharge of all debts except as otherwise provided in the Plan after completion of the payments required by the Plan during the 5 year term of the Plan. The provisions of Section 524 shall apply upon entry of the discharge. Debtors may receive a discharge of all dischargeable debts even if all payments under the Plan have not been completed provided the provisions of Section 1228(b) are satisfied. Property of the estate shall vest in Debtors and the Court shall terminate the service of the Trustee after the discharge is entered.

10.07. Cooperation and Reporting : Debtors shall file all periodic reports required by the Court or Trustee and shall file such reports in a timely manner. Debtors shall file all federal, state and local tax return as required by law and shall deliver all completed federal, state and local tax return to the Trustee at least thirty days before the due date for all such returns. The taxes owed by Debtors as shown by the tax returns shall be paid by Debtors on or before the date such taxes become due. Debtors shall meet with the Trustee or his representatives as required by the Court or the Trustee. All fees and costs charged by the Trustee, as allow by law shall be paid from the funds of Chapter 12 estate.

10.08. Claims : Class 5 Claimants must file a proof of claim in accordance with Bankruptcy Rule 3002 to have an allowed claim except as provided by Bankruptcy Rule 3003, 3004, and 3005 or order of the court . The deadline for creditors other than governmental units to file claims is March 6, 2011, while, the deadline for governmental units to file claims is April 26, 2011. A claim which is timely filed shall be allowed unless objection is made to it by formal objection or it is modified or disallowed in this Plan. Confirmation of this Plan shall constitute a final determination of the amount and validity of all claims expressly treated in this Plan. A disputed claim shall be disallowed without a hearing unless a creditor having a disputed claim files a proof of claim. It shall be the duty of Debtors to object to a disputed claim and the Trustee shall make distribution on account of such claim until an objection is filed. However, the Trustee may suspend payments to a creditor holding a disputed claim until the objection is heard and determined by the Court if Debtors files an objection to the claim within ninety days of the Effective date of the Plan.

Claims filed and allowed in the manner permitted by bankruptcy Code for post petition debt incurred by Debtors may be paid in full without interest in such order and on such terms as the Trustee may determine.

10.09. Terminology: Unless otherwise defined, and except as otherwise defined in Exhibit 1, all references to the following terms shall have the following meaning :

1.  **Debtors** shall mean the Chapter 12 petitioners.
2.  All references to a "**Section**" shall refer to applicable section of Title 11 of the

United States Code.

   **3. Bankruptcy Code** shall mean Title 11 of the United States Code.

   **4. Court** shall mean the United States Bankruptcy Court for the District of Nevada, Reno, Nevada.

   **5. Effective Date of the Plan** shall mean the eleventh day after the date of entry of the order confirming the Plan, provided however that the Effective Date shall be May 1, 2011 if May 1, 2011 is within 25 days of the confirmation date.

   **6. Term of the Plan** shall mean the period of time from the date on which Debtors filed their Voluntary Petition to the date on which the Court enters an order closing this case.

   **7. Trustee** shall mean the Chapter 12 trustee appointed in the connection with this proceeding.

# X.
# JURISDICTION

   11.01. Property of the estate shall remain under the jurisdiction of the Court during the pendency of the Plan except as otherwise provided in the Plan. The Court shall have the same jurisdiction over Debtors and the property of the estate during the pendency of the Plan as the Court had on the date the Voluntary Petition Under Chapter 12 was filed.

   Date : February 24, 2011

                                     WHITE LAW CHARTERED

                                     By:<u>  /s/ John White</u>
                                        John White, Esq.
                                        Bar # 1741
                                        335 W. 1st. St.
                                        Reno, NV 89503
                                        775-322-8000
                                        775-322-1228 (fax)
                                        john@whitelawchartered.com

INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit 1 (Ranch Operation Statement) | 7 pages |
| Exhibit 1 Table 1 (year 1) | 1 page |
| Exhibit 1 Table 2 (year 2) | 2 pages |
| Exhibit 1 Table 3 (year 3) | 2 pages |
| Exhibit 1 Table 4 (years 4 and 5) | 1 page |
| Exhibit 2 (Non-Ranch Budget & Operation Statement) | 1 page |
| Exhibit 3 (Disposable Income Projection) | 1 page |
| Exhibit 4 (Plan Payment Schedule) | 1 page |
| Exhibit 5 (AUM exhibit) | 2 pages |