John White, Esq., SB #1741
WHITE LAW CHARTERED
335 West First Street
Reno, NV 89503
775-322-8000
775-322-1228 (Fax)
john@whitelawchartered.com
Counsel for the Debtors

E-filed on July 7, 2011

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

JAMES A. WEST, *aka* JIM WEST,
and CARLEEN J. WEST, *dba* SWEET
WATER RANCH,

Debtors-in-possession.

_____/

CASE NO.: BK-N-10-54234-gwz
Chapter 12

SECOND AMENDED CHAPTER 12
PLAN AND VALUATION MOTION[1]

Hearing Date: July 7, 2011
Hearing Time: 10:30 a.m.
Estimated time: 1 hour

## SECOND AMENDED CHAPTER 12 PLAN

JAMES A. WEST AND CARLEEN WEST, husband and wife, ("Debtors") submit the following Second Amended Chapter 12 Plan pursuant to section 1221 of the Bankruptcy Code. This Second Amended Chapter 12 Plan consists of the below Summary ("Summary Plan") as well as the Long Form Plan and Feasibility Determination ("Long Form Plan"), attached as Exhibit A hereto, herein, together, the "Plan."

### SUMMARY OF WEST CHAPTER 12 PLAN

1. Debtors shall submit all or such portion of their future earnings or other future income to the supervision and control of the trustee as is necessary for the execution of the plan. Debtors' shall devote only $90 per month of Debtor Carlene West's social security income to plan payments (see Exhibit B hereto) and Debtor Jim West will receive a salary of $900 per month (See Exhibit A hereto, page 5, Table 1A). Debtors' living

---

[1] Except for its treatment of Class 1(e), which is changed, this Summary Plan is identical to the Debtors' First Amended Chapter 12 Plan, filed herein June 15, 2010. The changes to Class 1(e) do not affect any creditor other than Farm Credit Leasing. The Long Form Plan is unchanged.

1

expenses are detailed further in Exhibit B hereto.

2. All claims entitled to priority under Section 507 of the Bankruptcy Code ("Section 507"), shall be paid in full, in deferred cash payments, unless—
    A. the claim is a claim owed to a governmental unit that arises as a result of the sale, transfer, exchange, or other disposition of any farm asset used in the debtor's farming operation, in which case, the claim shall be treated as an unsecured claim that is not entitled to priority under Section 507, but the debt shall be treated in such manner only if the debtor receives a discharge; or
    B. the holder of a particular claim agrees to a different treatment of that claim.

3. Claims shall be divided into three classes, with each secured claim being in its own class. Each claim or interest within a particular class shall be treated the same unless the holder of a particular claim or interest agrees to less favorable treatment as follows:
    A. Secured.
        i. Nevada State Bank is Class 1(a).
        ii. Tri-State Livestock Credit is Class 1(b)
        iii. Wells Fargo Bank, NA (Wells Fargo Auto Finance) is Class 1(c)
        iv. Wells Fargo Equipment Finance Class 1(d)
        v. Farm Credit Leasing Services (Class 1(e)
    B. General Unsecured Claims.
    C. Interests

4. Claims entitled to priority under Section 507 shall not be classified but shall be paid in full over the life of the plan.

5. Treatment of Claims:

    **A.** **Secured Claims.**

    **Class 1(a).**

    The claim of Nevada State Bank (Claim # 11), herein NSB, is allowed as a fully secured claim in the amount of $943,373. NSB shall retain its security in the Sweetwater Ranch. Debtors shall make annual payments to NSB based on the amount of NSB's claim as of the date of the filing of the petition based on a 50 year amortization at 5.25% interest (simple, per annum) in the amount of $53,684 (the "Annual NSB Payment"). The Annual NSB Payment shall be made by Debtors to NSB on or before December 31 of each year of the plan, beginning December 31, 2011. If December 31 in a particular year falls on a day which is not a business day, the payment will be made the business day before December 31. NSB's loan shall be paid

in full, including principal, accrued unpaid pre and post petition interest, as well as any fees, costs and charges provided for in the documents evidencing the NSB Loan, no later than January 1, 2016.

If any annual payment is not received by NSB on or before the due date, NSB shall be entitled to immediate relief from the stay 3 days after serving on Debtors' counsel, John White, Esq., (the "Notice Period") a written notice of default (the "Default Notice") which Default Notice shall be filed with the Bankruptcy Court with a request that the Court enter an order on the expiration of the Notice Period terminating and lifting the automatic stay of 11 USC 362(a) and granting a waiver of the 14 day stay of Federal Rules of Bankruptcy Procedure section 4001(a)(3) with respect to the collateral securing NSB's loan to the Debtors, and permitting NSB its subsidiaries, affiliates, agents, representatives and/or employees to: (i) proceed with the Non-Judicial Foreclosure Proceeding with respect to the real property collateral securing its loan, (ii) to enforce its rights with respect to the collateral securing its loan pursuant to the terms and conditions of the documents evidencing the loan, and applicable non-bankruptcy law; and (iii) exercise any and all state law and contractual remedies with regard to the collateral securing its loan.

<u>NSB Loan Documents/Other Defaults.</u>  Other than as specifically set forth herein, the terms and conditions of the documents evidencing the NSB Loan (the "NSB Loan Documents") shall remain in full force and effect. In the event of a default by Debtors under the NSB Loan Documents, other than the failure to timely pay the annual payment as set forth in this Plan, the following terms shall apply:

1. NSB shall give written notice setting forth the default or defaults via U.S. Mail to Debtors at HC33 Box 33660, Ely, Nevada, 89301, with a copy to Tri-Sate Livestock Credit Corporation ("Tri-State"), Attn: Robert Bergsten, 2880 Sunrise Boulevard, Suite 224, Rancho Cordova, CA 95742, and with an additional copy to counsel for Debtors, John White.

2. Debtors shall have 15 days from the date of the notice of default to cure the default or defaults described in the notice (the "Cure Period"). If the default or defaults are not cured on or before the expiration of the Cure Period, NSB shall be entitled to either:

(i) Immediate relief from stay and waiver of the 14-day stay rule under the Federal Rules of Bankruptcy Procedure ("FRBP") 4001(a)(3), upon filing the notice of default with the Bankruptcy Court with a request that the Court enter an order terminating and lifting the automatic stay of 11 USC 362(a), and granting a waiver of the 14-day stay under FRBP Section 4001(a)(3) with respect to the collateral securing NSB's loan to the Debtors, and permitting NSB, its subsidiaries, affiliates, agents, representatives and/ or employees to: (i) proceed with the Non-Judicial Foreclosure Proceeding with respect

3

to the real property collateral securing its loan, (ii) to enforce its rights with respect to the collateral securing its loan pursuant to the terms and conditions of the documents evidencing the loan, and applicable non-bankruptcy law; and, (iii) to exercise any and all state law and contractual remedies with regard to the collateral securing its loan; or

(ii) Extend the time for Debtors to cure the default or defaults (the "Extended Cure Period"). NSB shall send a written notice to Debtors, with copies to counsel for Debtors and Tri-State, advising Debtors of NSB's election to extend the time to cure. The notice shall specify the date the Extended Cure Period expires. If the default or defaults are not cured before the expiration of the Extended Cure Period, NSB shall be entitled to immediate relief from stay and waiver of the 14-day stay rule under FRBP Section 4001(a)(3) upon filing the notice of default and the notice of the Extended Cure Period with the Bankruptcy Court, with a request that the Court enter an order terminating and lifting the automatic stay of 11 USC 362(a) and granting a waiver of the 14-day stay under FRBP Section 4001(a)(3) with respect to the collateral securing NSB's loan to the Debtors, and permitting NSB, its subsidiaries, affiliates, agents, representatives and/or employees to: (i) proceed with the Non-Judicial Foreclosure Proceeding with respect to the real property collateral securing its loan, (ii) to enforce its rights with respect to the collateral securing its loan pursuant to the terms and conditions of the documents evidencing the loan, and applicable non-bankruptcy law; and, (iii) exercise any and all state law and contractual remedies with regard to the collateral securing its loan.

Protection of Equity Cushion. NSB shall be entitled, at its own expense, to have the real property securing its loan re-appraised in January of each of the 5 years of the Plan. In the event that the fair market value of the real property collateral, not including the irrigation system, is less than $1,150,000.00 then the annual payment for that plan year shall increase by the amount necessary to keep NSB fully secured.

**Class 1(b).**

The claim of Tri-State Livestock Credit (Claim # 8) shall be allowed as a secured claim in the amount of $206,627. Tri-State asserts an unsecured deficiency claim in the amount of $1,545,961.54. Debtors reserve their rights to object to Tri-State's unsecured claim on the ground that it is fully secured by property which is not property of this estate. In the event that Tri-State's unsecured claim is paid in full outside of this plan, Tri-State shall withdraw its unsecured claim.

Interest shall continue to accrue at the contract rate. Tri-State's secured and unsecured claims shall be paid on or before December 31 of each year of the plan, a sum equal to seventy

4

percent (70%) of all of Debtors' disposable earnings remaining after: 1) plan payments of all other secured claims, 2) trustee's fees and 3) allowed administrative expenses. Tri-State's interest in the adjoining Double U ranch, which also secures its claim, is not affected by this plan, except insofar as plan payments may reduce the balance due under the note.

Nothing in this First Amended Chapter 12 Plan, both the Summary Plan and Long Form Plan, shall be construed to impose any obligations upon the Double U Ranch or create any contract between Debtors and third-parties including the Double U Ranch.

### Class 1(c).

Wells Fargo Auto Finance's $14,223 Claim (Claim # 10) shall be bifurcated into a secured claim of $9,260.00, being the value of its security (a 1997 Ford Van), and an unsecured claim in the amount of $4,963.00. Its secured claim shall bear interest at the rate of seven percent (7%) per annum. It shall receive payments on its secured claim of $183.36 per month for 60 months. Wells Fargo Auto Finance shall release its lien on Debtor's auto upon completion of plan payments. Except as herein provided, all provisions in Debtors' contract with Wells Fargo Auto Finance shall remain the same. This is a 60-month plan, beginning on January 1st, 2011, provided however. that the payments to the Class1(c) claimant shall be made for 60 months from the date of the first Plan payment or July 1, 2011, whichever is earlier. If any payments remain due on the Class 1(c) secured claim on December 31, 2015, the obligation shall balloon and be paid in full at that time.

### Class 1(d).

Wells Fargo Equipment Finance Claim (Claim # 3), secured by Debtors' Backhoe is not impaired by this plan. Debtor shall continue to make contract payments of $1,135 per month during the life of the plan, provided, however that at Debtors' option, these payments may be made annually ($4,558 per annum), on or before December 31 of each year of the plan, beginning no later than December 31, 2011.

### Class 1(e).

Debtors have a lease agreement dated May 16, 2008, between Farm Credit Leasing Services Corporation which includes one (1) 2008 T + L 7-Tower Pivot and one (1) 2008 T + L Center Pivot. For purposes of the plan, Farm Credit Leasing is fully secured based on its security interest in the pivots recorded with the State of Nevada. As a cure of the leases, Debtors shall make payments to it of $9,937 on or before December 31 of each year of the plan, with the first payment made on or before December 31, 2011. Additionally, Debtors shall pay $6,658.53 in Farm Credit Leasing's fees and costs prior to December 13, 2015. Absent such payment, Debtors

5

shall remain in default under their lease obligations, no cure shall have occurred, and Farm Credit Leasing shall remain the owner of the pivots.

Rather than seeking additional modifications of other potential conflicting plan terms, the language in this Class 1(e) shall control any other conflicting language stated in the Plan, including language in Exhibits A and B.

### B.  General Unsecured Secured Claims.

### Class 2.

Allowed General Unsecured Claims shall be paid on or before December 31 of each year of the plan, a sum equal to thirty percent (30%) of all of Debtors' disposable earnings remaining after: 1) plan payments on all secured claims other than Tri-State, 2) trustee's fees and, 3) allowed administrative expenses.

### C.  Interests.

### Class 3.

The equity interest of Debtors is not impaired by the plan.

6. All monetary defaults have been considered in the plan. All such defaults shall be deemed cured on confirmation of the plan.

7. All executory contracts not specifically dealt with by this plan are hereby rejected.

8. All property of the estate shall vest in the Debtors on confirmation of the plan.

9. Confirmation of this Plan shall constitute a finding that cause exists to extend plan payments over a period in excess of three years.

10. Allowed administrative expenses, including statutory Trustee fees, shall be paid in full over the 5 year life of the plan.

11. **DIP Account and Monthly Reports.** Debtors to immediately open a Debtor- in – Possession Account (or a trust account, if no bank in Ely, Nevada will open a Debtor-in-Possession account) and starting with the month of May, 2011, to prepare and file a Debtor-In- Possession Monthly Operating Report using the form used in the Southern District of California or a form deemed reasonably equivalent as approved by Bob Fletcher, Debtors' Agriculture Economist. The reports shall be filed on or before the 15th

6

of each month starting with the month of May, 2011 or as soon thereafter as possible, and continuing thereafter until the end of the plan term.

12. FAILURE OF CREDITOR(S) TO FILE A TIMELY WRITTEN OBJECTION TO THIS PLAN PRIOR TO CONFIRMATION SHALL CONSTITUTE ACCEPTANCE OF THE PLAN.

13. Subject to the provisions of §502, untimely claims are disallowed, without the need for formal objection, unless allowed by court order.

14. This plan may be altered post confirmation in a non-material manner by court order after notice to the debtor, the trustee, any creditor, whose claim is the subject of the modification, and any interested party who has requested special notice.

15. Except as otherwise provided herein, post petition interest on all unsecured and under secured claims is disallowed.

16. Attached hereto is a long-form Chapter 12 Plan and Feasibility Determination (the "Long Form Plan") prepared by Robert R. Fletcher, Ph.D, Debtors' proposed Plan Consultant, which attachment is incorporated herein. To the extent that this Summary differs from the attached Long Form Plan, this Summary shall control.

17. The value of the collateral shall be fixed in the amount stated in the Long Form Plan for purposes of administration of this plan as well as for purposes of the amount of any secured claim, if undersecured, unless objected to at or before the first date set for the confirmation hearing on this plan, in which case the value will be determined by the court. The debtors MOVE the court for an order so fixing the value of the collateral.

Dated July 7, 2011

_____/s/ Jim West_____  
Jim West, Debtor

_____/s/ Carlene West_____  
Carlene West, Co-Debtor

Submitted by:

WHITE LAW CHARTERED

By: _____  
John White, Esq.  
Counsel for the Debtors

7

## CERTIFICATE OF SERVICE

I hereby certify under penalties and pain of perjury that I am an employee of White Law Chartered and that on the date shown below, I served a true and correct copy of the DEBTORS' SECOND AMENDED CHAPTER 12 PLAN AND VALUATION MOTION, to the following parties:

☑ a. Via ECF System on July 7, 2011 to:

Louis M. Bubala, III, on behalf of Creditor Farm Credit Leasing Services Corporation - lbubala@armstrongteasedale.com, bsalinas@armstrongteasedale.com
M. Nelson Enmark - nenmark.trustee@gmail.com
Brian R. Irvine on behalf of Creditor, Tri-State Livestock Credit Corporation at birvine@jonesvargas.com, l-b@jonesvargas.com
Gayle A. Kern on behalf of Creditor Wells Fargo Bank N.A. at gakltd@kernltd.com, christinelamia@kernltd.com; Kaitlyn A. Miller at kaitlynmiller@kernltd.com
Scott F. Gilles, Esq. - bankruptcy@renolaw.com,
Stefanie T. Sharp on behalf of Creditor Nevada State Bank - ssharp@rbslattys.com, hdericco@rbslattys.com
Amy N. Tirre on behalf of Creditor Tri-State Livestock Credit Corp - amy@amytirrelaw.com, admin@amytireelaw.com
U.S. Trustee - RN - 11 USTPRegion17.RE.ECF@usdoj.gov

☑ b. Via First Class U.S. Mail, postage pre-paid on July 7, 2011, and addressed to:

Wells Fargo Equipment Finance, Inc.
Attention: Melissa Harris
1540 W. Fountainhead Pkwy
Tempe, AZ 85282-1839ng Matrix.

The undersigned further affirms that the foregoing is true and correct to the best of my knowledge and that preceding document does not contain the social security number of any person.

Dated: July 7, 2011.

*/s/ Jamiee Bonwell*
Jamiee Bonwell, Employee

WHITE LAW CHARTERED
LAWYERS
20TH CENTURY BLDG.
335 W. FIRST STREET
RENO, NV 89503
T (775) 322-8000
F (775) 322-1228

8